**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JARMAIL HUFFMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-24-1268-R** |
| | ) | |
| **CHARLES GREGORY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

Jarmail Huffman (Plaintiff), a state prisoner proceeding in forma pauperis,[1] seeks civil rights relief under 42 U.S.C. § 1983. Doc. 1.[2] United States District Judge David L. Russell referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 4.

## I. Background.

After an initial review of the complaint, this Court determined that three claims remained against two Defendants, Charles Gregory and Gabriel

---

[1] Plaintiff was proceeding pro se, but on May 19, 2026, counsel entered her appearance on his behalf. Doc. 52.

[2] Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

Guitierrez, former employees of the Lawton Correctional and Rehabilitation Facility (LCRF). Doc. 18, at 2. Those claims are:

Claim 1. Eighth Amendment claim based on excessive force;

Claim 2. First Amendment retaliation claim; and

Claim 3. Eighth Amendment violation for deprivation of medical care.

*Id.*; Doc. 31, at 2.

The undersigned incorporates the factual background from its previous Report and Recommendation. Doc. 15, at 3-6. GEO Group, Inc. owned and operated LCRF at the time of these alleged violations. Doc. 31, at 1. GEO has filed the Court-ordered Special Report. Doc. 31.

Before the Court is Defendants' amended motion to dismiss or, in the alternative, motion for summary judgment. Doc. 33. Plaintiff has responded to the motion and filed two supplements. Docs. 45, 49, 53. Defendants rely on documents outside the complaint to support the motion. So, the Court should treat Defendants' motion as one for summary judgment under Fed. R. Civ. P. 56. *See, e.g.*, *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297 (10th Cir. 2025) ("If the court considers evidence outside the pleadings, 'it must convert the motion to dismiss into a motion for summary judgment.'" (quoting *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024))). The motion seeks

an Order "dismissing Claims Two and Three of Plaintiff's Complaint." Doc. 33, at 1. The Court should deny the motion.

## II. Standard of Review.

The Court should grant summary judgment "if [Defendants] show[ ] that there is no genuine dispute as to any material fact and [Defendants are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering Defendants' motion, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to" Plaintiff. *Burke v. Utah Transit Auth.*, 462 F.3d 1253, 1258 (10th Cir. 2006) (quoting *Schutz v. Thorne*, 415 F.3d 1128, 1131 (10th Cir. 2005)).

A dispute is "genuine" when viewed in this light, if a reasonable jury could return a verdict for Plaintiff—the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Material facts are "facts that might affect the outcome of the suit under the governing law." *Id.* Plaintiff "may not rest upon mere allegations" in his pleadings to satisfy this requirement. *Id.* at 256; *see also Estrada v. Smart*, 107 F.4th 1254, 1262 (10th Cir. 2024) ("To avoid summary judgment, a nonmovant must offer evidence, not bare allegations." (citing Fed. R. Civ. P. 56(c)(1)(A))). "Rather, sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit [or

declaration], a deposition transcript or a specific exhibit incorporated therein." *Estrada*, 107 F.4th at 1263 (internal footnote and quotation marks omitted).

"Failure to exhaust under the [Prison Litigation Reform Act] is an affirmative defense." *Id.* at 1261 (quoting *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)). "When a defendant moves for summary judgment based on an affirmative defense, Rule 56 puts the burden on the defendant to 'demonstrate that no disputed material fact exists regarding the affirmative defense asserted.'" *Id.* (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997)). Once the defendant meets this initial burden, the plaintiff "must then demonstrate with specificity the existence of a disputed material fact." *Id.*

"If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." *Id.* at 1261 (quoting *Hutchinson*, 105 F.3d at 564). As applied here, if Defendants prove that Plaintiff failed to exhaust his administrative remedies, the onus falls on Plaintiff to show that the remedies were unavailable to him. *Id.*

## III. Claim II: Retaliation.

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of [a constitutional right]." *Rhodes v. Shannon*, No. 23-8026, 2024 WL 79964, at *3 (10th Cir. Jan. 8, 2024) (quoting *Smith v.*

*Maschner*, 899 F.2d 940, 947 (10th Cir. 1990)). This protection extends to the filing of administrative grievances. *See id.* ("The filing of prison grievances is constitutionally protected activity." (quoting *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018)).

Defendants argue that:

> Plaintiff alleges that the Defendants retaliated against him for threatening to file a grievance against them for excessive force by putting him back in the shower and advising him that they would not provide him with medical attention. The evidence is clear that the necessity for use of the shower was to remove the effects of the pepper spray and Plaintiff received prompt medical attention.

Doc. 33, at 3. They then state that Plaintiff did not complete the administrative remedy appeal process. *Id.* The Court first addresses the exhaustion argument and then Plaintiff's retaliation claim.

**A. The Prison Litigation Reform Act of 1995 (PLRA)'s exhaustion requirement.**

The PLRA requires a prisoner to exhaust all available administrative remedies before resorting to an action in federal court:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "[E]xhaustion requirements are designed to . . . give the agency a fair and full opportunity to adjudicate their claims" before a plaintiff files an action in federal court. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "There

is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted). To exhaust administrative remedies, the plaintiff must "us[e] all steps that the agency holds out, and [do] so properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (internal quotation marks and citation omitted). "[S]ubstantial compliance is insufficient." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

**B. Oklahoma Department of Corrections (ODOC)'s grievance procedure.**

ODOC maintains a policy on prison grievances. Doc. 31, at 3 (citing Ex. 2 (OP-090124)). The grievance procedure "is made available to all inmates and . . . includes at least one level of appeal." Doc. 31, Ex. 2, at 2.

To exhaust a claim under the grievance procedures, an inmate is first required to attempt informal resolution with a staff member. *See id.* at 7. If that attempt fails, the inmate can then file a request to staff "within seven days of the incident." *See id.* at 8. "The staff member assigned will respond in writing within 10 days of receipt" of the request to staff. *Id.* at 9.

If that does not resolve the issue, the inmate can file a grievance with the appropriate reviewing authority within fifteen days from the date he receives a response to the request to staff. *Id.* at 10. “The reviewing authority may choose to extend the submitting period up to [sixty] days for good cause.” *Id.* The grievance complaint and relief requested must be consistent with the complaint and relief requested in the previous request to staff. *Id.* If the grievance is submitted improperly, the reviewing authority will notify the inmate and give him one opportunity within ten calendar days from receipt of the notice to submit a corrected grievance. *Id.* at 11, 13. The reviewing authority will then respond and forward the answered grievance form to the inmate within twenty days of the receipt of the grievance. *Id.* at 12-13. This date can be extended by the reviewing authority but for no more than twenty additional days. *Id.* at 12. An inmate can submit a final appeal to the Administrative Review Authority (ARA) within fifteen days of receiving the grievance decision. *Id.* at 14. Unless further investigation is necessary, the ARA will respond to the appeal within thirty days. *Id*. at 16. “The ruling of the ARA is final and will conclude the internal administrative process available to the inmate/offender within the jurisdiction of the ODOC.” *Id*. at 17.

### C. Plaintiff's grievance history.

Defendants state that Plaintiff filed a June 27, 2024 Request to Staff about Defendants' retaliation after Plaintiff told them he was going to submit a grievance/complaint against them for their treatment of him. Doc. 33, at 2 (citing Doc. 31, Ex. 5). An LCRF representative responded on July 9, 2024, "I will address this issue with them." Doc. 31, Ex. 5, at 1. On August 12, 2024, Plaintiff filed an Inmate/Offender Grievance claiming the issue had not been resolved. *Id.* Ex. 5, at 3. On September 5, 2024, a "Facility/Unit Head" submitted a "Grievance Decision from Reviewing Authority" denying relief. *Id.* at 5. Relying on the Special Report, Defendants argue that "[t]here was no further appeal." Doc. 33, at 2; Doc. 31, at 5.

In response, Plaintiff appends ODOC's response from the Administrative Review Authority, dated September 19, 2024. Doc. 45, Ex. 10. Though denying relief, the response notes the inmate has "satisfied the exhaustion of [his] administrative remedies as required." *Id.* Defendants did not file a reply or provide an explanation of the potential error in the Special Report. There is conflicting evidence as to exhaustion. Viewing the evidence in the light most favorable to Plaintiff, the Court should deny summary judgment on this issue.

**D. Retaliation.**

A First Amendment retaliation claim requires: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Defendants make no argument beyond stating "the evidence is clear that the necessity of the shower was to" mitigate the impact of the pepper spray. Doc. 33, at 3. Plaintiff states in the complaint that during this pepper spray "excessive force incident," he advised Defendants that he intended to file an administrative grievance against them. Doc. 1, at 20. Defendants "then briefly walked Plaintiff back down the staircase and then put Plaintiff back in the shower (fully clothed and still handcuffed)." *Id.* at 20-21. When Defendants walked Plaintiff back upstairs to his cell, he asked that they allow him to change his wet clothes and take an "actual" shower without clothes and with the benefit of soap before changing into clean dry clothes. *Id.* at 21. He also asked that they provide him with medical attention, having been advised by other inmates that a nurse had arrived on the unit. *Id.* at 15, 21. Defendants

advised Plaintiff that "the []reason that they both [ ] refused" to grant Plaintiff's requests was that Plaintiff "had just [ ] verbally advised Defendants Gregory and Guitierrez that [he] would be filing an administrative grievance complaint against both Defendants Gregory and Guitierrez about their [ ] unconstitutional behavior." *Id.* at 21-22. According to Plaintiff, Defendants then locked him inside his cell while still handcuffed and left him unattended for fifteen minutes. *Id.* at 22. After they returned and removed his handcuffs, they left Plaintiff in his cell with wet, dirty, urine-soaked clothes for twenty-four hours while his unit was on lockdown. *Id.* at 22-23. Given the factual disputes, Defendants' lack of argument on this score, and viewing the evidence in the light most favorable to Plaintiff, the Court should deny summary judgment on Plaintiff's retaliation claim.

## IV. Claim III: Deprivation of medical care.

To recover under § 1983, a plaintiff must establish that a person acting under color of state law "violated his constitutional or statutory rights." *Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010). Plaintiff claims that Defendants violated his constitutional rights by acting with deliberate indifference to his serious medical needs by depriving him of medical care. Doc. 1, at 31. "[A] prison official's deliberate indifference to a convicted prisoner's serious medical needs constitutes cruel and unusual punishment in violation

of the Eighth Amendment." *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1043 (10th Cir. 2022).

Deliberate indifference has two components: (1) "an objective component requiring that the pain or deprivation be sufficiently serious," and (2) "a subjective component requiring that the offending officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991). "In other words, the focus of the objective component is the seriousness of the plaintiff's alleged harm, while the focus of the subjective component is the mental state of the defendant with respect to the risk of that harm." *Prince*, 28 F.4th at 1044.

The objective component is met if the deprivation is "sufficiently serious." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Farmer v. Brennan*, 522 U.S. 825, 834 (1994)). "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). The objective component must be evaluated by the actual harm suffered, not by symptoms perceived by the defendant. *See Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (stating that

symptoms displayed are only relevant to the subjective component of the deliberate indifference test).

The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and []he must also draw the inference." *Id.* at 751 (quoting *Farmer*, 511 U.S. at 837). It "can be satisfied under two theories: failure to properly treat a serious medical condition ('failure to properly treat theory') or as a gatekeeper who prevents an inmate from receiving treatment or denies access to someone capable of evaluating the inmate's need for treatment ('gatekeeper theory')." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (citing *Sealock*, 218 F.3d at 1211).

Plaintiff advances a claim for deprivation of adequate medical care because Defendants refused to send him for medical attention after the security incident. Doc. 1, at 32-34. "[A] delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm," which may be satisfied by "lifelong handicap, permanent loss, or considerable pain." *Requena*, 893 F.3d at 1216 (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

**A. The objective component.**

Plaintiff describes stinging eyes, blurred vision, and trouble breathing from the pepper spray, and severe shoulder pain from Defendants' handcuffing technique and "bodyslamming" him into the ground. Doc. 1, at 13, 16, & 20; *see also id.* at 32-39. Plaintiff also alleges he requested "medical attention (due to [his] injurie(s) suffered from Defendants[] Gregory's and Guitierrez' excessive force(s), and [his] urinating on [him]self) from medical staff." *Id.* at 21. He states that Defendants refused his request despite a nurse having arrived on Plaintiff's unit during the "excessive force incident." *Id.* at 15, 21-22.

Plaintiff was seen nearly two months after the excessive force incident for shoulder pain and was treated for that pain. Doc. 31, Exs. 11-12. A nurse also treated him during the evening on the day of the excessive force incident to flush the areas affected by the chemical agent spray. Doc. 31, Ex. 6.

Defendants do not assert any facts or arguments that Plaintiff has not met the objective prong to his deliberate indifference claim. Defendants only state that Plaintiff "has failed to demonstrate that Defendants acted with deliberate indifference to a 'serious medical need' by not facilitating medical care." Doc. 33, at 6. Further, Defendants have conceded any argument against a finding that the Plaintiff has not met the objective prong by stating the Plaintiff received treatment for his injuries. *Id.*; *see Sealock*, 218 F.3d at 1209.

**B. The subjective component.**

If a prison official's role is "to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, it stands to reason that he also may be liable for deliberate indifference from denying access to medical care." *Sealock*, 218 F.3d at 1211; *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (prison personnel manifest deliberate indifference by "intentionally denying or delaying access to medical care"). A prison official who is aware of a prisoner's obvious need for medical attention but refuses to relay the problem to medical staff, abdicates their gatekeeping role. *Paugh v. Uintah County*, 47 F.4th 1139, 1160 (10th Cir. 2022); *see, e.g.*, *Lucas*, 58 F.4th at 1139 ("The inquiry under a gatekeeper theory is not whether the prison official provided some care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises.").

Plaintiff alleges that Defendants told him they were aware of his injuries and refused to retrieve a medical care provider for him. Doc. 1, at 34. Defendants do not respond to or refute this allegation in any of their filings. Thus, taken as fact, Plaintiff's allegation satisfies the subjective inquiry of the deliberate indifference claim because Defendants were aware of Plaintiff's

likely suffering and potential harm yet still chose not to seek medical care for him, thus abdicating their gatekeeper roles.

**C. Denial/delay of care claim.**

"Events occurring subsequent to [the Defendants'] denial of medical care to [Plaintiff] have no bearing on whether [Defendants were] deliberately indifferent *at the time*" they refused care to Plaintiff. *Mata*, 427 F.3d at 756; *see also Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997) (holding district court erred in granting summary judgment to warden who knew of prisoner's injuries but did not facilitate care). Defendants may still be liable for denying Plaintiff medical care because they could not have known an assessment of Plaintiff would be forthcoming nor the assessment's findings. *Mata*, 427 F.3d at 756.

Defendants contend "there are ample documents refuting Plaintiff's claims. He was seen by medical personnel shortly after the incident and received medical attention." Doc. 33, at 5 (citing "Undisputed Fact 8"). Defendants' Undisputed Fact 8 states:

> On June 24, 2024, the same day as the pepper spraying incident, Plaintiff was examined by Jimmy Atma, LPN for complaints by Plaintiff that his eyes were burning due to exposure to pepper spray. He was placed in the shower for decontamination. He was monitored by Mr. Atma for acute pulmonary or cardiac complications, and the affected areas were flushed with copious amount[s of] cool water. According to the records, Plaintiff

> demonstrated improvement within fifteen minutes, and he was returned to his cell.

*Id.* at 2-3 (citing Doc. 31, Ex. 6, at 1). LPN Atma completed a Use of Force report indicating Plaintiff suffered no injury. Doc. 31, Ex. 7. Defendants also state that "Plaintiff has received medical care pursuant to the policies of the ODOC as set for in ODOC Operation Memorandum OP-140117 and by Operations Memorandum OP-040137." Doc. 33, at 2 (Undisputed Fact 4) (citing Doc. 31). They argue Plaintiff "was provided continuous medical care from the date of the event, up to and through the middle of 2025." *Id.* at 5. Defendants include neither Operation Memorandum OP-140117 nor OP-040137 for the Court's reference. Because of his "having been examined by multiple health care personnel" since June 26, 2024, Defendants maintain Plaintiff cannot show they acted with deliberate indifference to a serious medical need. *Id.* at 6.

Plaintiff does not quarrel with his having a shower (albeit fully clothed) and eventually receiving some medical care even on the day of the incident. *See* Doc. 45, at 14.[3] But he challenges the timing and adequacy of that care. *Id.*

---

[3] As Defendants point out, Plaintiff requested and received follow-up medical visits to address his vision and shoulder complaints. Doc. 31, Exs. 11, 12. No swelling or discoloration of his elbow was noted, and ibuprofen was recommended. *Id.* While his eye examination took time to schedule, his fundoscopic exam yielded normal results. *Id.* Ex. 17, at 3.

He alleges Defendants knew he was suffering from burning eyes, suffocating inability to breathe, and a dislocated or broken shoulder. *Id.* at 13. Yet they would not let him adequately rinse off and neither Defendant took him promptly to receive medical care or called for medical staff. Doc. 1, at 33-34.

Defendants have provided no evidence refuting Plaintiff's claim that they did not retrieve medical care for Plaintiff, or that they knew care was forthcoming. They have only provided evidence that Plaintiff was subsequently examined and treated by medical care providers. Doc. 33, at 2-3 (citing Doc. 31, Exs. 6, 8-17).

In *Mata*, the court reasoned:

> The fact that Ms. Mata was "assessed" by another nurse the morning after she sought medical attention from Ms. Weldon is irrelevant to Ms. Mata's cause of action against Ms. Weldon. Events occurring subsequent to Ms. Weldon's complete denial of medical care to Ms. Mata have no bearing on whether Ms. Weldon was deliberately indifferent *at the time* she refused to treat Ms. Mata. . . . Ms. Weldon could not know whether an assessment would be performed on Ms. Mata the next morning. She also could not know what an assessment performed the following morning would reveal concerning Ms. Mata's medical condition. Therefore, any assessment of Ms. Mata's condition conducted several hours after her encounter with Ms. Weldon is irrelevant to whether Ms. Weldon knew of and disregarded an excessive risk to Ms. Mata's safety.

427 F.3d at 756.

Similarly, Defendants here could not have known care was forthcoming to Plaintiff. Even if Defendants argue that the decontamination shower was

providing medical care to Plaintiff, Defendants do not refute they did not retrieve medical care for Plaintiff in regard to his shoulder pain. Based on these factual disputes, the Court should deny summary judgment on Plaintiff's deprivation of medical care claim.

## V. Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court DENY Defendants' motion. Doc. 33.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court on or before August 14, 2026, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation does not terminate the referral to the undersigned Magistrate Judge in this matter.

**ENTERED** this 3rd day of August, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE